**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

CUNAIL HUDSON,                    :
                                  :   Civil Action No. 06-666 (JBS)
            Plaintiff,            :
                                  :
            v.                    :   **OPINION**
                                  :
WARDEN GARY MERLINE,              :
                                  :
            Defendants.           :

**APPEARANCES:**

    CUNAIL HUDSON, Plaintiff pro se
    # 37-166
    Atlantic County Justice Facility
    5060 Atlantic Avenue
    Mays Landing, New Jersey 08330

**SIMANDLE**, District Judge

    Plaintiff Cunail Hudson ("Hudson"), currently confined at the Atlantic County Justice Facility in Mays Landing, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.   BACKGROUND

Hudson brings his civil rights action against Warden Gary Merline of the Atlantic County Justice Facility ("ACJF").  Hudson appears to be a pretrial detainee pending ongoing state criminal proceedings.  He alleges that his conditions of confinement at the ACJF violate his constitutional rights.  First, Hudson generally complains that the jail conditions are overcrowded and unsanitary.  In particular, Hudson alleges that he is forced to share a one-person cell with two other inmates.  Hudson also asserts that he has been denied access to Muslim Jumah prayer service on Fridays.

The Complaint seeks injunctive relief to remedy the overcrowded living conditions at ACJF and to attend Jumah prayer service on Fridays.  Plaintiff also seeks compensatory damages in the amount of $1 million.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action

in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[1]

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

---

[1] Plaintiff should also be aware that the PLRA requires Courts to determine whether a prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  If so, the prisoner is precluded from bringing an action in forma pauperis unless he or she is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).  It does not appear that plaintiff has filed any lawsuits which were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir.

2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III. SECTION 1983 ACTIONS

Hudson brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV. ANALYSIS

A. Due Process Conditions-of-Confinement Claim

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Asquith v. Department of Corrections, 186 F.3d

407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate

>    goal--if it is arbitrary or purposeless--a court
>    permissibly may infer that the purpose of the
>    governmental action is punishment that may not
>    constitutionally be inflicted upon detainees qua
>    detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under the circumstances presented in that case did not constitute punishment, and therefore, did not violate the pretrial detainees' due process rights.  Id., at 541-43.  The Court further noted that no due process violation occurred where pretrial detainees were detained for generally less than 60 days.  However, the Court cautioned that: "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privation and hardship over an extended

7

period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983). There, the Third Circuit established a two-part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes.  In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them."

713 F.2d at 992.

Here, Hudson alleges that he is forced to share a cell with two other inmates. He does not allege any genuine hardships or unconstitutional deprivations with respect to his overcrowded living conditions, except to generally say that the ACJF is unsanitary. It appears, however, that plaintiff has been confined at ACJF for three months, since December 1, 2005. Three months would seem to be an extended period of time for endurance of serious deprivations and hardship. Nevertheless, as noted above, Hudson complains only of the generally unsanitary condition of bunking with three people in one cell, which alone, without more, does not suggest an extreme deprivation of

constitutional magnitude inflicted on plaintiff for the purpose of punishment without reason. Thus, even if these allegations are true, it would not rise to the level of a constitutional deprivation. However, to the extent that Hudson can allege facts to show a combination of serious hardships or other deprivations of constitutional dimension that might constitute punishment without legitimate reason for a more substantial period of time, the Court will allow plaintiff to amend his complaint, subject to Fed.R.Civ.P. 15.[2]  See Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004).

B.  Denial of Free Religious Exercise

Next, Hudson alleges that he has been denied the right to attend his Muslim Jumah prayer service every Friday as required by his faith. Hudson alleges that defendant has no legitimate basis for this ban against plaintiff and other practicing Muslims from attending Friday Jumah services.

To establish a violation of his right to freely exercise his religion, an inmate must satisfy the "reasonableness test" set

---

[2] Once an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure:  Civil 2d § 1476 (1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).  The standards delineated in Turner and O'Lone indicate that when a prison regulation encroaches upon prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related to a legitimate penological interest.  See Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349.  Thus, plaintiff must allege that the restrictions on his religious practices are not reasonably related to the prison's legitimate penological interest.  See Robinson v. Ridge, 996 F. Supp. 447, 450 (E.D. Pa. 1997), aff'd, 175 F.3d 1011 (3d Cir. 1999).

The reasonableness standard involves the examination of the following four factors:  (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the suppression of expression; (2) whether there are alternative means of exercising First Amendment rights that remain open to prison inmates; (3) whether the right can be exercised only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an alternative exists which would fully accommodate the prisoners' rights at de minimis cost to valid penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 415-18 (1989); Turner, 482 U.S. at 89-91.

In this case, Hudson's basic allegations may be sufficient to state a First Amendment free exercise claim.  He alleges there

10

is no facially legitimate reason to restrict plaintiff's access to Friday prayer services, and he alleges that no accommodations were made for him to practice his Muslim faith by attending a communal Friday prayer service.  Such a claim is not legally frivolous.  Accordingly, the Court will allow this claim to proceed at this preliminary stage.

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be allowed to proceed in part with respect to plaintiff's claim that he has been denied free exercise of his religion.  However, the conditions of confinement claim will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), without prejudice to Hudson filing and amended Complaint to cure the deficiencies in his pleadings as set forth in this Opinion.  An appropriate order follows.


                                     **s/ Jerome B. Simandle**
                                     JEROME B. SIMANDLE
                                     United States District Judge

Dated: **March 8, 2006**